Opinion delivered June 22, 1887.

23 653,
28 211|

## No. 5584.

## W. F. Simmons *v.* The State.

1. Murder—Charge of the Court.—The trial court in this case did not err in charging upon murder of the first degree, in view of evidence tending to establish a premeditated killing, and in view of the further fact that such charge was necessary to a complete exposition of the elements of murder of the second degree.
2. Same—Manslaughter.—"D—d son of a bitch" is an expression which does not come within the legal meaning of the terms "insulting words towards a female relative," as those terms are used in the statute defining manslaughter. See the opinion for the substance of a charge upon manslaughter *held* sufficient under the evidence.

Appeal from the District Court of Grayson. Tried below before the Hon. Eugene Williams.

The conviction in this case was in the second degree for murder of S. A. Walthall, in Grayson county, Texas, on the twenty-sixth day of March, 1886. The penalty assessed against the appellant was a term of seven years and six months in the penitentiary.

J. J. Paine was the first witness for the State. He testified that the difficulty which resulted in the homicide took place during the progress of a game of base ball at Whitewright, in Grayson county, Texas, on the twenty-sixth day of March, 1886. The defendant and the deceased were in the game, on the same side. Deceased was the manager or captain of that side. G. R. Falls was at the bat, J. O. Lewis was pitcher, and R. S. Morehead was catcher. Defendant got behind Falls and stopped the

ball.  The pitcher told him to get away, but he caught the ball again and held it until Falls had nearly made the first base, when he dropped it to the ground.  That incident broke up the game and the players left the ground, all complaining and some cursing.  While the defendant was holding the ball, deceased called to him that he was doing a rascally trick.  Defendant dropped the ball and ran into an old stable about thirty steps from the home base, but emerged within a few seconds.  Deceased stepped out of the crowd, and told defendant that he ought not to have interfered with the game.  Defendant replied: "If you don't like it, help yourself."  Witness then saw that defendant had an open knife in his hand.  Deceased pushed defendant back a step or two with his fist, and said:  "If you will put your knife up, I will whip you."  Defendant made no reply, and the boys called upon them to have no difficulty.  Simmons's brother told him to put up his knife, and not to have a row.  About this time the deceased turned off, and, as he started back towards the home base, remarked:  "The son of a bitch won't fight."  Defendant then ran towards deceased, and, as deceased turned, struck him in the back a little to the left side, and under the shoulder blade.  Deceased caught up a stick, struck at defendant, and then threw it at him, striking him a glancing blow on the arm.  He then turned and ran north towards the church, the defendant after him.  Witness saw the blood flowing from deceased's back as he ran.  Defendant overtook the deceased, after a chase of about sixty yards, passed his right arm around deceased and stabbed him in the breast, and deceased fell.  Defendant then went towards his home by way of the school house.  The defendant was about eighteen and the deceased about seventeen years of age.  The defendant was the taller and larger, and the deceased the heavier of the two boys.  Walthall was taken to town, but he died from his wounds in about sixty minutes.  He was cut but once before he fled.  Some school boys were present, and some of them were taking part in the game of base ball.  Mr. Bruce lived about sixty yards from the home base of the ball ground, and the church stood about one hundred and fifty yards off.  The knife used by defendant was a strong but small "barlow," with a blade about two or two and a half inches long.  Witness did not see defendant open the knife.  It was open when he told deceased to help himself.

George R. Falls and Otto Clemmons testified, for the State, substantially as did the witness Paine.

Doctor May, who attended the wounded man, described the wounds and pronounced the wound in the breast necessarily a fatal one. The wound in the back would, in all probability, have terminated in death, had not the breast wound been inflicted.

The State closed.

Ben Patterson, the first witness for the defense, testified, in substance, that he was in the game of base ball and was on the first base at the time of the fatal difficulty. Defendant caught the ball once, dropped it immediately, and ran into the stable. He remained in the stable for some time. When he came out Walthall met him, cursed him, and told him that "God d—n him," he could whip him. Defendant remarked that he did not know that Falls was making his last strike when he caught the ball, and that he would make it all right. Walthall then struck or pushed defendant and cursed him. Defendant got a small "barlow" knife from his pocket, when the boys called to them not to fight. Walthall turned off with the remark: "The God d—d cowardly son of a bitch won't fight anything." Defendant sprang towards Walthall, but witness did not see him strike. Walthall seized a large stick, struck defendant with it, threw it at him, and ran. Simmons pursued him about thirty yards without catching him, and then went to the school house after his books.

R. S. Morehead testified, for the defense, that he heard Oscar Lewis call to defendant not to catch the ball. The witness did not see defendant catch the ball, but saw him throw it down and go to the stable. When he returned Walthall told him that he ought not to have interfered with the ball. Simmons in reply told Walthall that if he did not like it he need not take it, or words to that effect. Walthall replied that he did not like it, and walked towards defendant, who took out his knife. Walthall pushed defendant back and told him to put up his knife. Some of the boys called out that there should be no fight, and Walthall, turning towards the ball ground, remarked that the "son of a bitch would'nt fight anything." Defendant ran up and struck Walthall as though trying to cut him. Walthall then seized a stick, threw it at defendant, and fled towards the church. If the defendant overtook Walthall, witness did not know it.

Mrs. Mary Burnett testified that she was at Mr. Bruce's house when the fatal difficulty occurred. A noise on the ball ground

induced her to go to the door.   She then saw all the boys bunched together, and heard them cursing.  She saw one boy come out of the stable.   She then saw another boy strike the boy who came from the stable, with a stick, first on the arm and then on the head, throwing the stick both times.  She then went back into the house.

The defense closed.

George R. Falls, J. J. Paine, Otto Clemmons, John O. Lewis and R. S. Morehead were placed on the stand by the State in rebuttal, and each testified that they did not see Ben Patterson on the ball ground at any time during the game.  He most certainly was not on the first base at that time, for that place was occupied by ——, the blacksmith's boy.  Walthall did not curse defendant.

No brief for the appellant has reached the Reporters.

*W. L. Davidson*, Assistant Attorney General, for the State.

HURT, JUDGE.   Under an indictment charging the murder of one Walthall, appellant was convicted of the second degree of that offense.

When the charge was read to the jury appellant requested of the court the privilege of inspecting it, in order to the filing of exceptions thereto, it having been objected to generally.   The court declined the request, stating to counsel that they could make and file exceptions until the jury returned with their verdict; to which the appellant excepted.   After verdict appellant filed exceptions to the charge, and these we will consider as though filed before the return of the verdict.

Looking to the exceptions we find the first ground of complaint to be that the court charged upon murder of the first degree.   In this there was no error; first, because there was some evidence tending to show a premeditated killing; second, because to a complete exposition of the elements of murder of the second degree, this charge was necessary.

Charge twenty-ninth is excepted to upon the ground that "it instructed the jury that the passion and adequate cause are to be established by proof beyond a reasonable doubt."   The record does not present this ground of exception in the light in which it is placed by counsel for appellant.   The court charged, in effect, that if there was a reasonable doubt that the homicide was murder of the second degree, then the jury should acquit of that of-

fense; but that, before they could convict of *manslaughter*, they must believe, beyond a reasonable doubt, that all the elements of this offense existed.

There is evidence showing that, just before appellant stabbed deceased, the latter applied to the former the opprobrious words "damned son of a bitch." The charge is excepted to because it does not instruct upon the law of manslaughter arising upon insulting words used toward a female relative. We do not think this language comes within the meaning of the statute upon this subject. The term used is rather a sudden expression of anger and contempt, and, when used, no one understands it to be directed at the mother of the person to whom used. It is a lamentable fact that this mode of expression is of too common use in the country. Conceding, though, that this view is incorrect, by reference to the charge on manslaughter it will be found so comprehensive as to clearly embrace this ground of provocation, and it was doubtless considered by the jury.

We have disposed of all the exceptions to the charge, and find no such error as requires a reversal of the judgment. We have also carefully examined the motion for a new trial, and find no grounds therein, and find no sufficient reason for disturbing this verdict and judgment. The judgment is accordingly affirmed.

*Affirmed.*